IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| KENNETH WALTON GEORGE, DENNIS REED BOWEN, CLYDE FREEMAN, GEORGE MOYERS, JIM MATTHEWS, and HENRY MILLER, on their own behalf and on behalf of a class of persons similarly situated, | ) ) ) ) ) ) ) | C/A No.: 8:06-cv-373-RBH |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **ORDER** |
| DUKE ENERGY RETIREMENT CASH BALANCE PLAN and DUKE ENERGY CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) ) | |

Pending before the court is Plaintiffs' [Docket Entry #220] amended motion to certify a class. This proposed class action arises from Defendant Duke Energy Corporation's conversion of its traditional defined benefit plan to a cash balance plan.

## Background

Plaintiffs' amended class action complaint alleges three causes of action[1] under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"): 1) a claim for benefits under 29 U.S.C. § 1132(a)(1) based on the allegation that Defendants Duke Energy Retirement Cash Balance Plan and Duke Energy Corporation (collectively referred to as "Duke") failed to properly calculate participants' lump sum distributions - whipsaw claim; 2) a claim for benefits under 29 U.S.C. § 1132(a)(1) based on the allegation that Duke

---

[1] Plaintiffs initially asserted other claims under ERISA and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"), but those claims were dismissed by Order [Docket Entry #195] dated June 2, 2008.

miscalculated interest credits for the 1997 and 1998 Plan years; and 3) a breach of fiduciary duty claim under 29 U.S.C. § 1132(a)(3) based on the allegations that: a) Duke misled employees about the purpose and effects of the conversion from a defined benefit plan to a cash balance plan; and b) Duke committed numerous errors in the calculation of opening account balances. Accordingly, Plaintiffs seek certification of three classes: 1) a whipsaw class; 2) an interest rate class; and 3) a breach of fiduciary duty/opening balance class.[2]

In their amended motion for class certification, Plaintiffs define the proposed classes as follows:

1)   <u>Whipsaw Class</u> - (a) All former employees of Duke who were participants in Duke's Cash Balance Plan, between January 1, 1997 and December 31, 2002, who retired and took lump sum benefits prior to age 65 and before August 17, 2006, and whose lump sum benefits were calculated during a calendar quarter when the applicable interest crediting rate under the relevant Plan documents exceeded the applicable interest rate for discounting to present value under the Plan documents, and (b) All present employees of Duke who were participants in the Cash Balance Plan on or before December 31, 2002 who may elect early retirement and lump sum benefits as an optional form of benefit.[3]

2)   <u>Interest Rate Class</u> - All present and/or former employees of Duke who were participants in Duke's Cash Balance Plan at any time between January 1, 1997 and December 31, 1998, excluding participants who had retired on or before December 31, 1996.

3)   <u>Fiduciary Duty/ Opening Balance Class</u> - All present and/or former employees of Duke who were participants in Duke's Cash Balance Plan and employees as of January 1, 1997.

---

[2]   Plaintiffs do not seek class certification of part (a) of their breach of fiduciary duty claim (that Defendants misled employees about the purpose and effects of the cash balance conversion) and have indicated that they intend to pursue those misrepresentation claims on an individual basis. Plaintiffs do, however, seek certification of part (b) of their breach of fiduciary duty claim (that Defendants committed numerous errors in the calculation of opening account balances).

[3]   At the hearing on this motion, Plaintiffs' orally amended the whipsaw class definition to limit subclass (a) to those participants who received lump sum distributions before August 17, 2006.

This court previously ordered the parties to meet and confer as to whether certification could be agreed upon as to any of the proposed classes. As a result, the parties have agreed that the proposed Interest Rate Class meets the requirements of Rule 23(a) and (b)(3). The parties generally agree that the Whipsaw Class meets the requirements of Rule 23(a) and (b)(3); however, Duke contends that the Plaintiffs' definition of the Whipsaw Class includes a claim that was not pled in the amended complaint. To that extent, Duke opposes certification of the Whipsaw Class as to any claim that was not pled in the amended complaint. Duke also opposes certification of Plaintiffs' proposed Breach of Fiduciary Duty/ Opening Balance Class arguing that individual issues predominate over the class and statute of limitations (discovery rule) issues require individual adjudication.

### Standard of Review - Rule 23 Requirements

Whether to certify a class is governed by Rule 23 of the Federal Rules of Civil Procedure. "A district court has broad discretion in deciding whether to certify a class." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006). The plaintiff bears the burden of demonstrating whether the requirements of Rule 23 are met. *Thorn*, 445 F.3d at 317.

<u>Rule 23(a) Requirements</u>

Before a district court can certify a proposed class, each of the four prerequisites set forth in Rule 23(a) of the Federal Rules of Civil Procedure must be established: 1) numerosity of the members of the class such that joinder of all members is impracticable; 2) questions of law and fact that are common to the class; 3) the claims or defenses of the class representatives are typical of the claims or defenses of the class members; and 4) adequacy of representation. Fed. R. Civ. P. 23(a). The Fourth Circuit has stated that "the final three

3

requirements of Rule 23(a) 'tend to merge,' with commonality and typicality 'serv[ing] as guideposts for determining . . . whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 337 (4th Cir. 1998) (citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

1.    Numerosity

To satisfy the numerosity requirement of Rule 23(a), plaintiff must show that joinder is impracticable. *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 147 (4th Cir. 2001). No specific number is needed to satisfy this requirement. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984). The "practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986); *Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980); *see also Christman v. American Cyanamid Co.*, 92 F.R.D. 441, 451 (D.C.W.Va. 1981).

2.    Commonality

Commonality requires that there are questions of law or fact common to the class. *Thorn*, 445 F.3d at 319. "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees." *Id*. On the other hand, a question is not common if its resolution "turns on a consideration of the individual

circumstances of each class member." *Id.* (citing Charles Allen Wright et al., Federal Practice and Procedure § 1763 (3d ed. 2005)). "The common questions must be dispositive and over-shadow other issues." *Lienhart*, 255 F.3d at 146.

3.     Typicality

"Typicality requires that the claims of the named class representatives be typical of those of the class; 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Leinhart*, 255 F.3d at 146. The typicality requirement tends to merge with the commonality and adequacy of representation requirements. *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006). "A plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter*, 436 F.3d at 466-67. Typicality does not require the plaintiff's claims to be perfectly identical to the claims of class members; however, "when the variation in claims strikes at the heart of the respective causes of action," the Fourth Circuit has readily denied class certification. *Id.* at 467. "[T]he appropriate analysis of typicality must involve a comparison of the plaintiffs' claims or defenses with those of the absent class members." *Id.*

4.     Adequacy of Representation

Plaintiffs must be able to fairly and adequately protect the interests of the class members to satisfy the adequacy of representation requirement. *Talley v. ARINC, Inc.*, 222 F.R.D. 260, 268-69 (D.Md. 2004). The adequacy of representation requirement involves two inquiries: 1) whether the plaintiff has any interest antagonistic to the rest of the class; and 2) whether plaintiff's counsel is qualified, experienced and generally able to conduct the proposed

litigation. *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 325, 330 (D.S.C. 1991). "The adequacy of plaintiffs' counsel . . . is presumed in the absence of specific proof to the contrary." *S.C. Nat'l Bank*, 139 F.R.D. at 330-31.

Rule 23(b) requirements

In addition to meeting the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a), before a class can be certified, the putative class action must fall into one of the categories specified in Rule 23(b). Rule 23(b) states that: A class action may be maintained if Rule 23(a) is satisfied and if:

> 1) prosecuting separate actions by or against individual class members would create a risk of:
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; or
> 2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>> (C) the desirability or undesirability of concentrating the litigations of the claims in the particular forum; and
>> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

1.      Rule 23(b)(1)

Assuming the prerequisites of Rule 23(a) are met, class certification under Rule 23(b)(1) is appropriate if separate actions by or against individual class members would risk establishing "incompatible standards of conduct for the party opposing the class," or would "as a practical matter be dispositive of the interests" of absent nonparty class members "or substantially impair or impede their ability to protect their interests." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).  Stated another way, an "action may be brought as a class action under Rule 23(b)(1) if individual adjudication of the controversy would prejudice either the party opposing the class, (b)(1)(A), or the class members themselves, (b)(1)(B)." *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir. 1986).  "Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1)." *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 80 (E.D.Va. 2006) (stating that "given the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, 'ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class'").

2.      Rule 23(b)(2)

Rule 23(b)(2) requires that the "party opposing the class has acted or refused to act on grounds generally applicable to the class." *Zimmerman*, 800 F.2d at 389.  The challenged conduct by the defendant must be premised on a ground generally applicable to the entire class. *Mitchell-Tracey v. United General Title Ins. Co.*, 237 F.R.D. 551, 559 (D.Md. 2006). The Fourth Circuit has held that Rule 23(b)(2) "was limited to claims where the relief sought was primarily injunctive or declaratory." *Zimmerman*, 800 F.2d at 389-90; *see also Thorn*, 445

F.3d at 330 (noting twin requirements for Rule 23(b)(2) certification - that the defendant acted on grounds generally applicable to the entire class and that the plaintiff seeks predominantly injunctive or declaratory relief).

3.      Rule 23(b)(3)

For a class action to be certified under Rule 23(b)(3), the court must find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and the "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).   In determining whether the predominance and superiority requirements of Rule 23(b)(3) are met, the district court should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Thorn*, 445 F.3d at 319 (citing Fed. R. Civ. P. 23(b)(3)).   Unlike class actions under Rule 23(b)(1) and (b)(2), actions under Rule 23(b)(3) are "[f]ramed for situations in which class-action treatment is not clearly called for," but "may nevertheless be convenient and desirable." *Lienhart*, 255 F.3d at 147 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). Certification under Rule 23(b)(3) is appropriate "when settling the parties' differences in a single proceeding serves their interests by achieving 'economies of time, effort, and expense' and promoting uniformity of decisions as to similarly situated class members without

sacrificing fairness. *Mitchell-Tracey*, 237 F.R.D. at 559 (quoting *Amchem Prods., Inc.*, 521 U.S. at 615).

**Discussion**

I.     Whipsaw Class

Plaintiffs' whipsaw claim alleges that Duke, rather than using the appropriate interest rate to reduce participants' retirement benefit to present value, used an interest rate that deprives participants of the full benefit promised under the Plan.  As a result, Plaintiffs allege that Duke's method of calculating lump sum distributions effectuates an unlawful reduction in accrued retirement benefits, which violates ERISA's anti-cutback rule and the express terms of the Plan.

If a defined benefit plan offers a lump sum payment to the individual, the lump sum must be the actuarial equivalent of the individual's accrued benefit. 29 U.S.C. § 1054(c)(3). To determine the actuarial equivalent of the individual's accrued benefit, the accrued benefit must be projected to the individual's normal retirement age-65, then reduced to present value.  A whipsaw calculation occurs when the interest rate used to project a current account balance to normal retirement date or convert it to an annuity is higher than the interest rate used to discount the annuity back to present day value. *See* 26 U.S.C. § 411(a)(7)(A)(i); *West v. AK Steel Corp.*, 484 F.3d 395, 400-01 (6th Cir.2007); *In re Citigroup Pension Plan ERISA Litigation*, 470 F.Supp.2d 323, 334 (S.D.N.Y.2006).  If the plan's projection rate exceeds the discount rate, then the present value of the accrued benefit will exceed the participant's hypothetical account balance. *In re Citigroup*, 470 F.Supp.2d at 334. Under ERISA, 29 U.S.C.

9

§ 1053(a), and the Internal Revenue Code, 26 U.S.C. § 411(a)(2), an impermissible forfeiture results if the larger amount is not paid out. *Id*.

Duke opposes certification of Plaintiffs' whipsaw claim to the extent it raises a whipsaw claim that was not pled in the amended complaint. Duke otherwise agrees that the requirements of Rule 23(a) and (b)(3) are met. Specifically, Duke contends that Plaintiffs' amended motion for class certification seeks certification of two distinct whipsaw classes. The first whipsaw class, Duke contends, is based on Plaintiffs' claim that fluctuations between the interest crediting rate, tied to 30-year treasuries and measured quarterly, and the discount rate, also tied to 30-year treasuries but measured annually, generated whipsaw liability. Duke refers to this class as the "Interest Rate Whipsaw Class." The second whipsaw class, Duke contends, is based on Plaintiffs' claim that § 5.04(c) of the 1999 Plan provides the applicable discount rate, which generates whipsaw liability. Duke refers to this class as the "5.04(c) Whipsaw Class." Duke opposes certification of the Interest Rate Whipsaw Class on the basis that the Interest Rate Whipsaw Class was not alleged in the amended complaint. Duke agrees that the 5.04(c) Whipsaw Class meets the requirements of Rule 23 and contends that certification of the 5.04(c) Whipsaw Class is proper under Rule 23(b)(3).

Plaintiffs respond that Duke mischaracterizes Plaintiffs' whipsaw allegations. Plaintiffs assert that the amended complaint clearly states the broad issue that Duke wrongly failed to perform whipsaw calculations since the inception of the cash balance plan. Plaintiffs argue that the amended complaint sets forth a whipsaw claim in general terms and references § 5.04(c) of the Plan in a single paragraph, which was meant to illustrate an example of the impact of the whipsaw calculation. Plaintiffs also note that Duke's argument is based on the

unsupported notion that Plaintiffs' responsive pleading to Duke's motion for judgment on the pleadings somehow limits the allegations of the complaint to bar evidence that Duke failed to comply with requirements regarding whipsaw calculations other than the time period controlled by § 5.04(c) of the 1999 Plan. Plaintiffs further argue that Duke has been on notice of the whipsaw claim based on the quarterly/annual rate since well before the December 19, 2007 motion hearing. Plaintiffs point out that the matter of the quarterly/annual interest rate discrepancies was the subject of extensive discovery following the December 2007 hearing. After the close of discovery, Plaintiffs submitted their initial expert report on March 31, 2008, which specifically addressed the issue. In summary, Plaintiffs argue that Duke cannot claim surprise at the interest rate discrepancy whipsaw claim.

Plaintiffs whipsaw allegations are found in paragraphs 25(a)-(e), 66-73 and 80-84 of their amended complaint. [Amended Complaint, Docket Entry #197]. A fair reading of Plaintiffs' amended complaint indicates that the reference to § 5.04(c) of the 1999 Plan was simply meant to illustrate how Plaintiff George's lump sum distribution was allegedly improperly calculated. As Plaintiffs point out, § 5.04(c) is referenced in only one paragraph (¶ 71) of the 26 page amended complaint. The amended complaint states a general whipsaw claim with no reference to § 5.04(c). Specifically, the amended complaint states:

> The defendants fail to properly calculate the lump sum distributions that participants are entitled to under the Cash Balance Plan. Rather than utilizing the appropriate interest rate to reduce the participants' retirement benefit to present value, the defendants have utilized an interest rate that deprives participants of the full benefit promised under the Plan . . .
>
> As a result, the defendants' method of calculating lump sum distributions effectuates an unlawful reduction in accrued retirement

11

> benefits. Such reduction in accrued benefits violates ERISA's anti-cutback rule and the express terms of the Plan.
>
> The plaintiffs are informed and believe that they, and other similarly situated Plan participants, are entitled to the order of this Court declaring that the defendants' method of calculating lump sum distributions violates ERISA's anti-cutback provisions and the express terms of the Plan, and that defendants be required to restore any lost benefits resulting from the defendants' unlawful calculation of lump sum distributions.

[Amended Complaint, at ¶ 81, 83-84, Docket Entry #197].

Importantly, the definition of the whipsaw class offered in Plaintiffs' amended complaint includes participants who have received lump sum distributions since January 1, 1997. If Plaintiffs had intended to limit whipsaw claims to those arising under § 5.04(c) of the 1999 Plan, it is unlikely they would have defined the class to include a time period covering the two years before § 5.04(c) was adopted.

Duke offers no authority for the proposition that Plaintiffs' allegations should be limited to the arguments made in their responsive briefing to Duke's motion for judgment on the pleadings. Furthermore, Plaintiffs' responsive briefing noted that the whipsaw issue was technical and factual and would require expert testimony as the case proceeds, as well as factual discovery to disclose how Duke itself applied the plan terms and performed calculations. Now that discovery has occurred and Plaintiffs' expert has performed his analysis of the whipsaw issue, Plaintiffs have refined their whipsaw claim to include a whipsaw claim arising from the application of § 5.04(c) of the Plan and a whipsaw claim arising from discrepancies between the annual and quarterly 30-year treasury rate for a given year.

Plaintiffs' amended complaint satisfies the notice pleading requirements of Rule 8(a) and the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and states a whipsaw claim for all participants whose lump sum benefits were calculated during a calendar quarter when the applicable interest crediting rate exceeded the applicable discount rate. Accordingly, the whipsaw claim, as pled in the amended complaint, includes both an interest rate whipsaw claim and a 5.04(c) whipsaw claim. Duke appears to have been on notice of the interest rate whipsaw claim since as early as December 2007. It should be noted that discovery in this case has been completed and prosecution of an interest rate whipsaw claim will require no additional discovery. For those reasons, the court rejects Duke's argument that Plaintiffs' interest rate whipsaw claim was not pled in the amended complaint.

Duke raises no other opposition to certification of Plaintiffs' whipsaw claim.

The court finds that the requirements of Rule 23(a) are met with regard to Plaintiffs' whipsaw claim. Concerning the numerosity requirement, the whipsaw class consists of thousands of former Duke employees who have taken early retirement and opted for a lump sum distribution rather than an annuity. Plaintiffs assert, and Duke does not dispute, that Duke's internal whipsaw report lists approximately 5000 lump sum retirees through the third quarter of 2003.

As to commonality, Duke admits that no whipsaw calculations have been performed under the cash balance plan and takes the position that it is entitled to the "safe harbor" provision of IRS Notice 96-8. The common issue among the proposed class is whether Duke was required to perform a whipsaw calculation when participants chose the lump sum option for payment of their retirement benefit. Although the rates applied to a particular participant

or class member may vary, the question of whether Duke was required to perform a whipsaw calculation and the application of the safe harbor provision is common to the entire whipsaw class.

With respect to typicality, each member of the proposed whipsaw class has allegedly suffered a similar injury, the loss arising from Duke's failure to have their lump sum distribution determined using a whipsaw calculation. Each member of the proposed whipsaw class has allegedly suffered, or will suffer in the future, an impermissible forfeiture of benefits from Duke's failure to use a whipsaw calculation when required.

With regard to adequacy of representation, Plaintiffs seek the appointment of Plaintiffs Matthews, Miller, George, and Bowen as class representatives. Plaintiffs' proposed whipsaw class is comprised of two subclasses: a) former Duke employees who were participants in the cash balance plan between January 1, 1997, and December 31, 2002, and have received lump sum distributions; and b) present Duke employees who were participants in the cash balance plan on or before December 31, 2002, who may elect early retirement and a lump sum distribution in the future. Plaintiffs Bowen and George are former Duke employees who received lump sum distributions with no whipsaw calculation and represent the interests of whipsaw subclass (a). Plaintiffs Miller and Matthews are present Duke employees who were vested in the plan on or before December 31, 2002,[4] and may elect lump sum distributions in the future. Plaintiffs Miller and Matthews represent the interests of whipsaw subclass (b).

---

[4] Because a 2003 amendment to the Plan brought the Plan into compliance with IRS Notice 96-8's safe harbor provision, participants who did not vest until after December 31, 2002, would not be included in either whipsaw subclass. The 2003 amendment applies only to participants who vested in the plan after the amendment's effective date.

Plaintiffs Bowen, George, Miller, and Matthews have also demonstrated a basic understanding of this case and have participated in discovery.

The court also finds that the requirements of Rule 23(b)(3) are met. Although whipsaw subclass (a) primarily seeks monetary relief, whipsaw subclass (b) seeks declaratory and injunctive relief. While Duke contends that certification of the whipsaw class is appropriate only under Rule 23(b)(3), Plaintiffs believe that certification of the whipsaw class is proper under Rule 23(b)(1), (b)(2), and (b)(3). Despite their disagreement, Plaintiffs represent that they will consent to certification of the whipsaw class under Rule 23(b)(3) as long as they are not deemed to have waived their right to later seek certification under subsections (b)(1) and (b)(2) in the event that Duke decides to seek decertification of the (b)(3) class for any reason.

II.     Interest Rate Class

Plaintiffs interest rate claim alleges that Duke applied an incorrect interest crediting rate to participants' account balances during the 1997 and 1998 plan years. As a result, Plaintiffs allege that participants who received lump sum distributions or monthly annuity payments did not receive the full amount to which they were entitled under the Plan. Also, Plaintiffs allege that participants who have not yet retired will not receive the full amount of benefits they are entitled to unless the error is corrected.

Defendants do not oppose certification of Plaintiffs' proposed interest rate/credit class. The parties agree that the proposed interest rate class meets the requirements of Rule 23(a) and (b)(3).

The court finds that the proposed interest rate class meets the requirements of Rule 23(a). As to the numerosity requirement, the interest rate class as defined may include as

many as 16,000 members. Regarding commonality, the sole issue for resolution of the interest rate claim is to determine and apply the correct interest crediting rate for the 1997 and 1998 plan years under the language of the two initial iterations of § 3.9 of the Plan. Plaintiffs allege injuries which are typical to the proposed interest rate class. Each member of the proposed interest rate class allegedly suffered losses based on Duke's alleged failure to apply the appropriate interest rates during the 1997 and 1998 plan years. With regard to the class representatives, Duke appears to agree that Plaintiffs George, Bowen, and Matthews are appropriate class representatives. Duke, however, objects to the appointment of Plaintiffs Moyers and Miller as class representatives. Relying on a few pages of deposition excerpts, Duke alleges that neither Moyers nor Miller has any interest in pursuing the claim. However, for the reasons stated by Plaintiffs in their amended motion for class certification, the court finds that Plaintiffs Moyers and Miller, as well as Plaintiffs George, Bowen, and Matthews, are adequate class representatives.

The court also finds that the proposed interest rate class meets the requirements of Rule 23(b)(3). Common questions of law and fact predominate over the class and the class action mechanism is superior to other means for the resolution of the issues presented with respect to the proposed interest rate class. Again, the question affecting the proposed interest rate class as a whole is whether Duke applied the appropriate interest crediting rate for the 1997 and 1998 plan years. Once the appropriate interest rate is determined, the rate will be applied uniformly to all cash balance plan participants who were participants during the 1997 and 1998 plan years. Therefore, certification of the proposed interest rate class is appropriate under Rule 23(b)(3).

III.    Breach of Fiduciary Duty/Opening Balance Class

As indicated in footnote 2 above, Plaintiffs' amended complaint sets forth a two part breach of fiduciary duty claim: part (a) is a misrepresentation claim alleging that Duke misled participants about the purpose and effects of the cash balance conversion; and part (b) involves alleged errors with opening balances during the initial stages of the conversion. Based on the authorities denying class certification of breach of fiduciary misrepresentation claims in this Circuit, Plaintiffs withdrew their request for certification of the misrepresentation claim (part (a)) and have decided to pursue the misrepresentation claims on an individual basis. *See* [Plaintiffs' Reply in Support of Motion for Class Certification, at 18, Docket Entry #93].

The specific breaches of fiduciary duty alleged in connection with the opening balance claim (part (b)), as stated in paragraphs 93 and 94 of the amended complaint, include:

1)    "arbitarily chang[ing] opening account balances for numerous employees chosen at its discretion in attempts to circumvent the notice requirements of ERISA § 204(h);"

2)    leading "participants to believe that [Duke] was determining opening balances based on a four-step process. In actuality, there was a Step 5, intentionally not communicated to participants, where Duke Energy would arbitrarily make adjustments to selected account balances in hopes of avoiding the notice requirements of ERISA § 204(h);"

3)    "fail[ing] to inform participants that it was arbitrarily revising opening balances for selected participants;"

4)  "fail[ing] to inform participants of the reasons for making such revisions and the criteria for determining which participants would have their opening balances revised;" and

5)  due to Duke's "discretionary alteration of account balances, participants' benefits under the Cash Balance Plan are not definitely determinable as required under 26 U.S.C. § 401(a)(25)." [Amended Complaint, ¶ 93-94, Docket Entry #197].

The parties discuss two interrelated elements which combine to make up Plaintiffs' breach of fiduciary duty/opening balance claim: 1) a misrepresentation claim - that Duke misrepresented the manner in which participants' opening balances were calculated; and 2) an interim administration claim - that after the January 1997 conversion to the Cash Balance Plan, Duke administered the Plan outside the four-corners of the Plan documents until approximately July 1997.

A.  Misrepresentation

As to the misrepresentation element of Plaintiffs' breach of fiduciary duty/opening balance claim, Duke opposes certification arguing that whether a plan participant detrimentally relied or was likely prejudiced by Duke's alleged misrepresentations concerning the opening balances requires individual proof and participant-by-participant analysis. The court agrees.

Plaintiffs' misrepresentation claim concerns Duke's alleged misrepresentation or concealment of the manner in which opening account balances were calculated. The elements to prove an ERISA breach of fiduciary duty based on a misrepresentation are: 1) the defendant was acting as an ERISA fiduciary; 2) a misrepresentation on the part of the defendant; 3) the materiality of that misrepresentation; and 4) detrimental reliance by the plaintiff on the

misrepresentation. *Wiseman v. First Citizens Bank & Trust Co.*, 215 F.R.D. 507, 510 (W.D.N.C. 2003). In cases involving defective or misleading summary plan descriptions (SPD) or the failure to provide a required notice or disclosure, courts generally allow the plaintiff to establish reliance or prejudice. *See Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 585 (2d Cir. 2006) (plaintiff must demonstrate "likely prejudice" resulting from deficient SPD); *Govoni v. Bricklayers, Masons and Plasterers Int'l Union of America, Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir. 1984) (plaintiff "must show some significant reliance upon, or possible prejudice flowing from, the faulty plan description"); *Branch v. G. Bernd Co.*, 955 F.2d 1574, 1579 (11th Cir. 1992) (to prevent an employer from enforcing the terms of a plan that are inconsistent with those of the plan summary, a beneficiary must prove reliance on the summary); *but see Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 137 (6th Cir. 1988) (plan participant who had been misled by summary descriptions of plan was not required to prove detrimental reliance).

In *Pierce v. Security Trust Life Ins. Co.*, a case involving an alleged faulty SPD, the Fourth Circuit stated its position that "the case law establishes that a plan participant 'must show reliance and prejudice in order to recover for an employer's failure to comply with ERISA's statutory requirements." *Pierce*, 979 F.2d 23, 30 (4th Cir. 1992) (citing *Govoni v. Bricklayers, Masons and Plasterers Int'l Union of America, Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir. 1984)). From the language of *Pierce*, initially it appeared the Fourth Circuit would require a plaintiff to establish both reliance <u>and</u> prejudice to recover for a faulty plan description. *Id.* at 30. However, in *Aiken v. Policy Mgmt. Sys. Corp.*, the Fourth Circuit clarified its position and adopted the disjunctive test set forth in *Govoni v. Bricklayers, Masons*

19

*and Plasterers Int'l Union of America, Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir. 1984), that "[t]o secure relief, [the claimant] must show some significant reliance upon, *or* possible prejudice flowing from, the faulty plan description." *Aiken*, 13 F.3d 138, 141.

The parties dispute whether the Plaintiffs are required to establish detrimental reliance or likely prejudice to prevail on Plaintiffs' breach of fiduciary duty/misrepresentation claim. In a previous Order, the court declined to rule on whether detrimental reliance or likely prejduce was required to establish misrepresentation in the context of an ERISA breach of fiduciary duty claim. Duke contends the court need not resolve the issue now arguing that regardless of whether the standard is detrimental reliance or likely prejudice, both require evidence of each participant's individual factual circumstances. That may be true; however, unquestionably, detrimental reliance is a more strenuous hurdle to overcome than likely prejudice. In the court's view, resolution of the class certification issue requires the court to determine whether detrimental reliance or likely prejudice is the necessary standard for Plaintiffs' breach of fiduciary duty/misrepresentation claim.

Although the alleged misrepresentations in this case involved summary descriptions of certain aspects of the plan and were obviously meant to inform participants of plan changes, the court can find no authority for adopting Plaintiffs' position and applying the likely prejudice standard to general misrepresentation claims against an ERISA fiduciary. The critical distinction between *Pierce* and *Aiken* is that those cases involved alleged faulty SPDs. The case at bar does not involve any allegation of a faulty SPD. In *Aiken*, the Fourth Circuit gave no hint that it was willing to extend the likely prejudice standard or lessen the burden necessary to prove an ERISA breach of fiduciary duty/misrepresentation claim.

Summary Plan Descriptions are statutorily mandated communications governed by 29 U.S.C. § 1022(a) & 1024(b), which "must be sufficiently accurate and comprehensive to 'reasonably apprise' participants and beneficiaries of their rights and obligations under the plan." M. Malissa Burnette et al., Labor and Employment Law for South Carolina Lawyers 229 (3d ed. 2007). The statute requires the SPD to be "written in a manner calculated to be understood by the average plan participant and must be sufficiently accurate and comprehensive to apprise participants and beneficiaries of their rights and obligations under the Plan." *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 110 (2d Cir. 2003). Further, the SPD must contain the plan's eligibility requirements for benefits as well as the circumstances which may result in disqualification, ineligibility or loss of benefits." *Burke*, 336 F.3d at 110.

Generally, the SPD is the most relied upon document by participants of ERISA plans. Because the SPD is the primary means of communicating information about the plan to participants, the accuracy of the information contained in the SPD is vital to the participant's complete understanding of his rights and obligations under the plan. As such, it is logical to apply a more lenient standard of proof - the likely prejudice standard - for participants to recover for a faulty or misleading SPD.

Although the alleged misleading communications to Plaintiffs in this case occurred through somewhat "routine" company mailings; there is no contention that these communications were a subsitute for a formal SPD. The communications were essentially newletters sent to participants to keep them apprised of upcoming changes to their benefit plan. In the absence of authority to do so, the court declines to apply the likely prejudice standard to Plaintiffs' breach of fiduciary duty/misrepresentation claim. Under the facts of this

case, Plaintiffs must prove detrimental reliance to prevail on their breach of fiduciary duty/misrepresentation claim. In sum, with regard to their opening balance/misrepresentation claim, Plaintiffs must prove that: 1) the defendant was acting as an ERISA fiduciary; 2) a misrepresentation on the part of the defendant; 3) the materiality of that misrepresentation; and 4) detrimental reliance by the plaintiff on the misrepresentation. *Wiseman*, 215 F.R.D. at 510; *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 73 (3d Cir. 2001).

Having concluded that detrimental reliance is required for Plaintiffs to prevail on their opening balance/misrepresentation claim, it is apparent that their misrepresentation claim is not appropriate for class resolution.

Despite the Plaintiffs' arguments that class treatment is appropriate because the misrepresentations were uniform and dessiminated to all class members, the problem lies, not in the misrepresentations themselves, but in the differing degrees of reliance on the purported misrepresentations. As argued by defense counsel at the hearing, each named Plaintiff had a different reaction to the alleged misleading documents.

> Mr. Bowen concluded he was worse off when he received his estimated opening balance in October of 1996. Mr. Matthews said he was suspicious from the outset - - that is, August of 1996 - - when he received the first on track newsletter and that every successive communication heightened his concerns. Mr. Miller concluded that he was hurt by the cash balance plan by January 1997 or when it became effective. Mr. George and Mr. Moyers each concluded that they were worse off once they received their July 1997 statement providing them with an opening account balance . . .Each of the Plaintiffs therefor had differing reactions to the documents, coming to different conclusions at different points in time.

[Transcript, at 41, Docket Entry #250]. Other class members may have read the communications regarding opening account balances and taken Duke's respresentations at face

22

value, never questioning that their benefits were allegedly impermissibly being cut. Whether each participant relied on the communications and, more importantly, the degree to which each participant relied upon the communications precludes class treatment of Plaintiffs' opening balance/misrepresentation claim. It appears to the court that in reaching the merits of each participant's opening balance/misrepresentation claim, the degree of detrimental reliance on the alleged misleading communications, which appears to vary from participant to participant, would be paramount in resolving the case. Rule 23(a)'s commonality requirement cannot be met under these circumstances. Individual circumstances specific to each class member preclude class treatment of Plaintiffs' misrepresentation claim. As noted in *Wiseman*, "the Plaintiffs would have to establish that each member of the proposed class relied on Defendants' alleged misrepresentations in making his investment decisions." *Wiseman*, 215 F.R.D. at 510. In the context of this case, Plaintiffs would have to establish that each member of the proposed class relied on Duke's communications regarding the upcoming cash balance conversion, and that each proposed class member relied to their detriment by failing to take appropriate actions to protect their pensions before the cash balance conversion took effect. Plaintiffs' argument essentially amounts to a request that the detrimental reliance element be presumed for all class members, but have yet to present any authority to support that position. Again, the likely prejudice standard applicable to SPDs does not apply in this case.

Plaintiffs argue that individualized inquiries into detrimental reliance are not required because they seek relief under Rule 23(b)(1) and/or 23(b)(2). Plaintiffs' position is not without support. *See In re Enron Corp. Sec.*, No. MDL 1446, Civ. A. H-01-39-13, 2006 WL 1662596, at *17-18 (S.D. Tex. June 7, 2006) (certifying class claims of misrepresentation and

inducement under Rule 23(b)(1) despite the failure to meet the predominance requirement under Rule 23(b)(3) with regard to the reliance element). This court, however, is not denying certification on the basis that the predominance requirement of Rule 23(b)(3) is not met. The court is denying certification because Plaintiffs have failed to establish the threshold commonality requirement of Rule 23(a). *See Wiseman*, 215 F.R.D. at 510 (denying certification of Plaintiffs' misrepresentation claim because the burden of individualized analysis defeated the commonality requirement of Rule 23(a)). For those reasons, Plaintiffs' request to certify their breach of fiduciary duty/opening balance claim based on misrepresentation is denied.

      B.    Interim Administration

      With regard to the interim administration aspect of Plaintiffs' breach of fiduciary duty/opening balance claim - that after the January 1997 conversion to the Cash Balance Plan Duke administered the Plan outside the four-corners of the Plan documents for an approximate six month period, Duke opposes certification arguing that Plaintiffs failed to allege an interim administration claim in their amended complaint. Duke also opposes certification of the interim administration claim on the basis that no named Plaintiff suffered harm or injury from the alleged breach because no named Plaintiff commenced benefits during the interim administration period.

      The court finds that certification of Plaintiffs' interim administration opening balance claim would be inappropriate because the claim is too interrelated and dependent upon the misrepresentations and concealment alleged by Plaintiff. Although common issues are present, individual questions of detrimental reliance necessarily overlap and overwhelm the common issues raised.

In a previous Order, the court noted that Plaintiffs' breach of fiduciary duty/opening balance claim was that "Duke breached the standards of care in the manner that they administered the Plan by arbitrarily adjusting the opening account balances of selected employees in attempts to avoid ERISA's notice requirements under 29 U.S.C. § 1054(h) and that, as a result, participants' benefits [were] not definitely determinable as required under 26 U.S.C. § 401(a)(25)." [Order, at pg. 45, Docket Entry #195]. In a later Order, the court recognized Plaintiffs' interim administration allegations but rejected the notion that Plaintiffs were attempting to interject an additional, distinct breach of fiduciary duty claim. In footnote 2 of the court's Order denying Duke's motion to dismiss the amended fiduciary duty claim, the court stated "Defendants argue that Plaintiffs have asserted new fiduciary duty claims - an interim administration claim and a claim that the cash balance plan was void *ab initio*. Plaintiffs, however, merely assert these facts, not as separate claims, but as relevant evidence to provide context to their breach of fiduciary duty/opening balance claim." [Order, at pg. 4, Docket Entry #239]. Neither party filed a motion to alter or amend and neither party indicated that the court had misunderstood the nature of Plaintiffs' breach of fiduciary duty/opening balance claim. At the hearing on the amended motion to certify the class, Plaintiffs' counsel, while explaining the breach of fiduciary duty/opening balance claim, stated:

> [W]e have really two elements to this claim, but it's important to see that both of these elements really work together in terms of showing a fiduciary breach and heading to the relief that ultimately would be warranted in this case. We have pled misrepresentation as a breach of fiduciary duty, and we have pled what we call an ad hoc administration opening balance claim that, in essence, focuses on the lack of a formal written definitely determinable plan at the inception of the cash balance conversion.

And in looking at the time line of this conversion, I think it's important to show how these two claims work together and get us to a point of requesting that this court award equitable relief.

[Class Certification Hearing Transcript, at 26-27, Docket Entry #250].

Speaking to the commonality requirement and the ultimate relief requested with regard to their breach of fiduciary duty/opening balance claim, Plaintiffs' counsel asserted:

What we believe is that these issues - - was there a misrepresentation, is the December Plan in violation of ERISA - - these are all common questions. The fact of the misrepresentation, because this is a fiduciary duty claim and the administrator is not allowed to provide false information to participants, we believe the focus is not on reliance to participants but on concealment by Duke; and that because of that concealment, the remedy of reformation based on unilateral mistake can be proven. It's the concealment that would play to the remedy.

*Id*. at 33.

The effectiveness of the class mechanism for resolving Plaintiffs' breach of fiduciary duty opening balance claim is minimal if individualized determinations of detrimental reliance serve to bar the ultimate relief sought. Plaintiffs have not sought to certify a breach of fiduciary duty/opening balance claim based on interim administration of the Plan that is distinct or divisible from their breach of fiduciary duty/opening balance claim based on misrepresentation. Plaintiffs have argued and presented their breach of fiduciary duty/opening balance claim in such a way that individual questions of detrimental reliance require resolution before the court could possibly grant Plaintiffs' the ultimate relief they seek. As a result, the court, in its discretion, declines to certify Plaintiffs' breach of fiduciary duty/opening balance claim based on interim or ad hoc administration of the Plan.

<u>Class Counsel</u>

Duke does not oppose the appointment of Plaintiffs' counsel in this case as class counsel. Because there is no specific proof, or even argument, to the contrary, the adequacy of plaintiffs' counsel is presumed. *S.C. Nat'l Bank*, 139 F.R.D. at 330-31. Additionally, based on the affidavits submitted, Plaintiffs' counsel has substantial experience in ERISA litigation and complex class action litigation. Accordingly, the court appoints the following law firms as class counsel: 1) Whetstone Myers Perkins & Young LLC; 2) The Gilreath Law Firm, P.A.; 3) Wallace & Graham, P.A.; 4) Wyche Burgess Freeman & Parham; and 5) Richardson, Patrick, Westbrook & Brickman.

### Conclusion

For the reasons stated above, Plaintiffs' [Docket Entry #220] amended motion for class certification is **GRANTED in part** and **DENIED in part**. The court certifies Plaintiffs' proposed whipsaw class (count three of amended complaint) and interest rate class (count four of amended complaint). The court declines to certify Plaintiffs' breach of fiduciary duty/ opening balance class (count six of amended complaint).

Pursuant to Rule 23(c), the court certifies the following whipsaw class and interest rate class.

The whipsaw class shall be defined as follows:

> (a) All former employees of Duke who were participants in Duke's Cash Balance Plan, between January 1, 1997 and December 31, 2002, who retired and took lump sum benefits prior to age 65, and whose lump sum benefits were calculated during a calendar quarter when the applicable interest crediting rate under the relevant Plan documents exceeded the applicable interest rate for discounting to present value under the Plan documents, and

(b) All present employees of Duke who were participants in the Cash Balance Plan on or before December 31, 2002 who may elect early retirement and lump sum benefits as an optional form of benefit.

Plaintiffs Bowen and George are appointed as class representatives of whipsaw subclass (a).

Plaintiffs Matthews and Miller are appointed as class representatives of whipsaw subclass (b).

The interest rate class shall be defined as follows:

All present and/or former employees of Duke who were participants in Duke's Cash Balance Plan at any time between January 1, 1997 and December 31, 1998, excluding participants who had retired on or before December 31, 1996.

Plaintiffs Matthews, Miller, Moyers, Bowen and George are appointed as class representatives of the interest rate class.

Pursuant to Rule 23(g), Plaintiffs' counsel, as specified above, are appointed as class counsel.

The parties are Ordered to meet and confer with regard to Class Notice as soon as is practicable and submit proposed language for the Class Notice within 20 days from the date of this Order.

**IT IS SO ORDERED**.


Florence, SC          s/ R. Bryan Harwell
September 4, 2009        R. Bryan Harwell
                United States District Judge